UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DEANGELA MANNING, | |
| Plaintiff, | Case No: |
| vs. | Division: |
| YRC, INC. DBA YRC Freight | **JURY TRIAL DEMANDED** |
| Serve:<br>Registered Agent<br>The Corporation Company, Inc.<br>112 SW 7th Street<br>Suite 3C<br>Topeka, KS 66603 | |
| and | |
| SAMUEL MORGAN, | |
| Serve:<br>6126 Ashbrooke Rd.<br>Evansville, IN 47710 | |
| Defendants. | |

## <u>COMPLAINT</u>

**COMES NOW** Plaintiff, DeAngela Manning, by and through her undersigned attorneys, and for her causes of action against Defendants YRC, Inc. DBA YRC Freight, and Samuel Morgan, states as follows to the Court:

### <u>GENERAL ALLEGATIONS</u>

1.      Plaintiff DeAngela Manning is a citizen of Missouri.

2.      Defendant Samuel Morgan is a citizen of Indiana.

3.      At all times relevant herein, Defendant YRC, Inc. dba YRC Freight (hereinafter referred to as "YRC"), is a Kansas corporation registered with the Kansas Secretary of State, with its principal place of business located at 10990 Roe Ave., MS A 515, Overland Park, KS

66211 and its registered agent, The Corporation Company, Inc., located at 112 SW 7th Street Suite 3C, Topeka, KS, 66603.

4.      This court has original jurisdiction over the matter and parties pursuant to 28 USC § 1332 as there is complete diversity amongst the parties and the value in controversy exceeds $75,000, exclusive of interest and costs.

5.      Plaintiff demands trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure.

6.      Defendant YRC owned and/or leased the 2002 Volvo Tractor-Trailer being operated by Samuel Morgan at the time of the collision.

7.      At all times relevant to this case, Defendant Samuel Morgan was an agent and/or employee (hereinafter to refer to statutory or otherwise) of Defendant YRC and was acting within the course and scope of his agency and/or employment

8.      At the time of the collision referenced in this complaint, Defendant YRC was registered with the Federal Motor Carrier Safety Administration as an interstate commercial motor carrier.

9.      At all times relevant, YRC, Inc. was operating as an interstate commercial motor carrier.

10.     At all relevant times, YRC, Inc. was operating as a for-hire motor carrier.

11.     At all times relevant, YRC, Inc. had authority to operate for property.

12.     At all times relevant herein and at the time of this crash, Defendant YRC was a commercial motor carrier engaged in interstate commerce, transporting goods for hire throughout the United States.

13.     At all times relevant herein and at the time of this crash, Defendant YRC was acting individually and through its drivers, agents, servants, joint venturers, and/or employees,

each of whom were acting within the course and scope of their employment with Defendant YRC.

14.     At all times relevant herein and at the time of this crash, Defendant Samuel Morgan was operating a tractor-trailer in the course and scope of his employment and agency with Defendant YRC.

15.     Defendant YRC is liable for all acts and omissions of Defendant Samuel Morgan while he/it was operating within course and scope of employment and/or agency, under the doctrine of *respondeat superior*.

16.     Defendant YRC, and its agents, servants, employees, and drivers, including Defendant Samuel Morgan, at all relevant times set forth herein, were subject to the rules and regulations contained and set forth in Title 49, Code of Federal Regulations (Federal Motor Carrier Safety Regulations).

17.     In its relevant parts, the Motor Carrier Safety Regulations define "Motor Carrier" as a for-hire motor carrier or a private motor carrier; including a motor carrier's agents, officers and representatives, as well as employees responsible for hiring, supervising, training, assigning, or dispatching of drivers and employees concerned with the installation, inspection, and maintenance of motor vehicle equipment and/or accessories; this definition includes the term "employer."  49 C.F.R. §390.5.

18.     In its relevant parts, the Motor Carrier Safety Regulations define an "Employee" as any individual, other than an employer, who is employed by an employer and who, in the course of his or her employment directly, affects commercial motor vehicle safety.  "Employee" includes a driver of a commercial motor vehicle (including an independent contractor while in the course of operating a commercial motor vehicle).  49 C.F.R. §390.5.

19.     At all times relevant to this case, Defendant Samuel Morgan was a driver of the Volvo tractor-trailer and therefore, an "employee," as defined by the Motor Carrier Safety Regulations.

20.     In its relevant parts, the Motor Carrier Safety Regulations define "Motor Vehicle" as any vehicle, machine, tractor, trailer, or semi-trailer propelled or drawn by mechanical power and used upon the highways in the transportation of passengers or property, or any combination thereof determined by the Federal Motor Carrier Safety Administration.  49 C.F.R. §390.5.

21.     At all times relevant to this case, the tractor-trailer driven by Defendant Samuel Morgan was a semi-trailer and therefore, a "motor vehicle," as defined by the Motor Carrier Safety Regulations.

22.     In its relevant parts, the Motor Carrier Safety Regulations define an "Employer" as any person engaged in a business affecting interstate commerce that owns or leases a commercial motor vehicle in connection with that business, or assigns employees to operate it. 49 C.F.R. §390.5.

23.     At all times relevant to this case, Defendant YRC was an "employer," as defined by the Motor Carrier Safety Regulations.

24.     At the time of this incident and at all times herein mentioned, Defendant Samuel Morgan was operating the Volvo Tractor-Trailer as a driver for Defendant YRC

25.     On or about April 23, 2018, at approximately 2:00 p.m., Plaintiff DeAngela Manning was operating a 2016 Chevrolet Malibu on Eastbound US 50, .7 miles east of Clay County Rd. CR2075E, in Clay County, Illinois,

26.     At that time and place, Plaintiff DeAngela Manning was stopped at the stop light for a work zone behind Defendant Samuel Morgan.

27.     Defendant Samuel Morgan had passed the stop line and backed up the tractor-trailer colliding with the front of Plaintiff DeAngela Manning's vehicle.

28.     Eastbound Highway 50 at the crash location is a much traveled, open, and publicly dedicated state roadway and thoroughfare in the Southern District of Illinois.

29.     Plaintiff suffered and continues to suffer permanent and disabling injuries as a direct and proximate result of this incident.

30.     At the time of the crash, the truck operated by Defendant Samuel Morgan bore the name of Defendant YRC as well as its DOT number and/or MC (operating authority) number.

31.     The negligence of Defendants YRC, Inc. and Samuel Morgan, directly and proximately, caused or contributed to cause injuries to Plaintiff as described in greater detail herein.

32.     As a direct and proximate result of this crash and the direct and proximate result of the negligence of YRC, Inc., and its agents, servants, and employees, including Samuel Morgan, Plaintiff injured her head, neck and back.

33.     As a direct and proximate result of the aforesaid incident and the carelessness and negligence of YRC, Inc. and its agents, servants and employees, including Samuel Morgan, Plaintiff DeAngela Manning has undergone medical treatment and is reasonably likely to undergo future medical treatment including future surgical intervention.

34.     As a direct and proximate result of this crash and the direct and proximate result of the negligence of YRC, Inc., and its agents, servants, and employees, including Samuel Morgan, Plaintiff DeAngela Manning has suffered pain and suffering and will continue to suffer.

35.     As a direct and proximate result of this crash and the direct and proximate result of the negligence of Defendants YRC, Inc. and its agents, servants, and employees, including Samuel Morgan, Plaintiff DeAngela Manning has incurred medical bills in excess of $25,000.00 and will continue to incur medical expenses related to the treatment of injuries sustained in the crash.

**COUNT I**

## NEGLIGENCE OF DEFENDANT SAMUEL MORGAN

**COMES NOW** Plaintiff (hereinafter "Plaintiff") and fully incorporate and re-allege each and every paragraph set forth above as if they were set forth herein and further states:

36.     At the time of this crash, Defendant Samuel Morgan negligently operated the tractor-trailer that caused this incident on the above stated date and time by:

      a)      Driving too fast for conditions;

      b)      Failing to reduce speed to avoid a collision;

      c)      Failing to keep a proper lookout;

      d)      Failing to take proper remedial action which could have avoided this collision or minimized the impact;

      e)      Operating the tractor-trailer without adequate training and experience;

      f)      Operating the tractor-trailer when not properly qualified to do so;

      g)      Driving while tired and/or fatigued;

      i)      Driving while under the unsafe side-effects of prescription medication;

      j)      Driving overly aggressive;

      m)      Failing to stop his tractor-trailer, slacken his speed, swerve or sound a warning in an attempt to avoid colliding with Plaintiff's vehicle, when he could and should have done so in the exercise of the highest degree of reasonable care;

      n)      Improper traffic lane usage

37.     At least one of the negligent acts or omissions by Defendant Samuel Morgan, as described in the above paragraphs and the below paragraphs, was a direct and proximate cause of the crash in question and the resulting injuries to Plaintiff.

38.     As a direct and proximate result of the negligence of Defendant Samuel Morgan, Plaintiff was seriously injured as described herein and has sustained damages, pain and suffering

and will sustain damages, pain and suffering in the future.

39.     Defendant Samuel Morgan knew or should have known that his conduct as described herein created a high degree of probability of injury.

40.     Defendant Samuel Morgan was not properly qualified to operate the tractor-trailer and did not have the required training and experience and was operating in violation of the law and this behavior and conduct was reckless and shows a complete indifference and conscious disregard for the safety of the motoring public, so as to entitle Plaintiff to Aggravated (punitive) Damages.

41.     The operation of the tractor-trailer by Defendant Samuel Morgan and the manner in which it was operated on the public roadways, was willful, wanton, and reckless, and shows complete indifference and conscious disregard for the safety of the motoring public, so as to entitle Plaintiff to Aggravated (punitive) Damages.

42.     The conduct of Defendant Samuel Morgan as described herein, specifically including violations of pertinent rules of the road and the Federal Motor Carrier Safety Regulations as listed within this Petition, as well as other acts and omissions of as described herein, was willful, wanton, and reckless, and shows complete indifference and conscious disregard for the safety of the motoring public, so as to entitle Plaintiff to Aggravated (punitive) Damages.

**WHEREFORE** Plaintiff prays for judgment against Defendant Samuel Morgan in a sum in excess of Seventy Five Thousand Dollars ($75,000) exclusive of costs and interest, as is fair and reasonable to compensate Plaintiff for her injuries, plus aggravated (punitive) damages, and for such other relief this Court deems just and proper under the circumstances.

**COUNT II**

## STATUTORY EMPLOYMENT/LOGO/LEASE LIABILITY AGAINST DEFENDANT
## YRC

**COMES NOW** Plaintiff and fully incorporates, and re-alleges each and every paragraph set forth above as if they were set forth herein and further states:

43.     Based upon all aforementioned allegations, Defendant YRC are vicariously liable for the negligence of Defendant Samuel Morgan based upon the doctrines of statutory employment, logo, and/or lease liability.

**WHEREFORE** Plaintiff prays for judgment against Defendant YRC in a sum in excess of Seventy-Five Thousand Dollars ($75,000) exclusive of costs and interest, as is fair and reasonable to compensate Plaintiff for her injuries, plus aggravated (punitive) damages, and for such other relief this Court deems just and proper under the circumstances.

## COUNT III
## VICARIOUS LIABILITY AGAINST DEFENDANT YRC

**COMES NOW** Plaintiff and fully incorporates and re-alleges each and every paragraph set forth above as if they were set forth herein and further states:

44.     At all times relevant, Defendant Samuel Morgan was acting in the course and scope of his agency and/or employment with Defendant YRC.

45.     Based upon the prior allegations, Defendant YRC is vicariously liable for the negligence of Defendant Samuel Morgan based upon the doctrines of agency and respondeat superior.

**WHEREFORE** Plaintiff prays for judgment against Defendant YRC in a sum in excess of Seventy-Five Thousand Dollars ($75,000) exclusive of costs and interest, as is fair and

reasonable to compensate Plaintiff for her injuries, plus aggravated (punitive) damages, and for such other relief this Court deems just and proper under the circumstances.

## COUNT IV
## INDEPENDENT NEGLIGENCE AGAINST DEFENDANT YRC

**COMES NOW** Plaintiff incorporates and re-alleges each and every paragraph set forth above as if they were set forth herein and further states:

46.     At all times relevant, Defendant YRC was operating as an interstate motor carrier pursuant to authority granted to it by the U.S. Department of Transportation.

47.     Throughout its existence, Defendant YRC has, or should have been, aware of the existence of the Federal Motor Carrier Safety Regulations.

48.     As an interstate motor carrier, Defendant YRC has a duty, to follow and comply with the Federal Motor Carrier Safety Regulations.

49.     The various safety regulations included within Parts 390 – 397, of which Defendant YRC had a duty to follow, include, but are not limited to, the following:

   a.   Defendant YRC had an independent duty to require observance by its drivers of any duty or prohibition imposed upon the drivers by the Federal Motor Carrier Safety Regulations.  49 C.F.R. §390.11;

   b.   Defendant YRC had a duty to not require or permit a driver, including Defendant Samuel Morgan, to operate a commercial motor vehicle, while the driver's ability or alertness is so impaired, or so likely to become impaired, through fatigue, illness, or any other cause, as to make it unsafe for him/her to begin or continue to operate the commercial motor vehicle.  49 C.F.R. §392.3;

c.  Defendant YRC had a duty to not allow or permit a driver, including Defendant Samuel Morgan, to operate a commercial motor vehicle unless that person is qualified to drive a commercial motor vehicle.  49 C.F.R. §391.11.;

d.  Defendant YRC had an independent duty not to aid, abet, encourage or require any of its employees to violate the safety regulations contained within Chapter 390.  490 C.F.R. §390.13;

e.  Defendant YRC had an independent duty to prohibit its employees from driving a commercial vehicle unless the employee had first completed and furnished to Defendant YRC an application for employment that meets the requirements as set forth in 49 C.F.R. §391.21(b);

f.  Defendant YRC had an independent duty to make investigations and inquiries with respect to each driver it employs and to do so in the manner prescribed in 49 C.F.R. §391.23;

g.  Defendant YRC had an independent duty to obtain the motor vehicle record of every driver it employs, including Defendant Samuel Morgan, at least once every twelve months in determine whether that driver continues to meet the minimum requirements for safe driving or is disqualified to drive a commercial motor vehicle.  49 C.F.R. §391.25;

h.  Defendant YRC had an independent duty require each of its drivers, including Defendant Samuel Morgan, to furnish it with a list of all violations of motor vehicle traffic laws and ordinances of which he/she has been convicted in the preceding 12 months.  49 C.F.R. §391.27;

i.  Defendant YRC had an independent duty to prohibit its employees, including

Defendant Samuel Morgan, from driving until the driver had successfully

completed a road test and been issued a certificate of driver's road test.  40.

C.F.R. §391.31;

j.    Defendant YRC had an independent duty to ensure that its drivers, including

Defendant Samuel Morgan, were physically qualified to operate a commercial

motor vehicle and that its drivers had undergone the necessary examinations in

the required timeframes as set forth within the Federal Motor Carrier Safety

Regulations.  40 C.F.R. §391 – Subpart E; and

k.    Defendant YRC had an independent duty to inspect, repair, and maintain, all of

the motor vehicles subject to its control, including the motor vehicle operated by

Defendant Samuel Morgan on the day of the aforementioned crash, and to ensure

that the motor vehicle and all of its parts and accessories were in proper operating

condition at all times, including at the time of the aforementioned crash.  40

C.F.R. §396.3.

50.    That Defendant YRC had a duty to comply with the Federal Motor Carrier Safety

Regulations including the specific aforementioned regulations.

51.    That it is customary standard in the motor carrier industry to have in place an

adequate safety program administered by competent and adequately trained safety personnel to

ensure that the motor carrier and its drivers are adhering to the Federal Motor Carrier Safety

Regulations, including but not limited the specifically aforementioned regulations.

52.    That, at all times prior to the aforementioned collision, Defendant YRC failed to

have in place an adequate safety program.

53.    As a result of its inadequate and/or inexistent safety program, Defendant YRC

violated numerous Federal Motor Carrier Safety Regulations including, but not limited to the

specifically aforementioned regulations prior to the aforementioned collision involving Plaintiff.

54.     As a result of its inadequate and/or inexistent safety program, Defendant YRC allowed its drivers, including Defendant Samuel Morgan, to violate numerous Federal Motor Carrier Safety Regulations including, but not limited to the specifically aforementioned regulations prior to the aforementioned collision involving Plaintiff.

55.     That Defendant YRC's violation of numerous Federal Motor Carrier Safety Regulations, including the specifically aforementioned regulations created a danger to the health, welfare, and safety of the motoring public, including Plaintiff.

56.     Defendant YRC was thereby negligent in that it failed to implement an adequate safety program and it violated numerous Federal Motor Carrier Safety Regulations, including but not limited to the specifically aforementioned regulations.

57.     Defendant YRC was thereby negligent in that it failed to implement an adequate safety program and it failed to ensure that its agents, employees and drivers, including Defendant Samuel Morgan, complied with the Federal Motor Carrier Safety Regulations, including but not limited to the specifically aforementioned regulations.

58.     As a direct and proximate result of the independent negligence of Defendant YRC, Plaintiff was injured and sustained damages and will continue to be damaged in the manners previously described in this Petition.

59.     Defendant YRC knew or had information from which they, in the exercise of ordinary care, could have known that such conduct as described herein created a high degree of probability of injury to the motoring public such as Plaintiff.

60.     The conduct of Defendant YRC as described herein, specifically including violations of Illinois state law and the various Federal Motor Carrier Safety Regulations was willful, wanton, and reckless, and shows complete indifference and conscious disregard for the safety of the motoring public, so as to entitle Plaintiff to Aggravated (punitive) Damages.

61.     Because of Defendant YRC's willful, wanton, and reckless behavior, and for her indifference and conscious disregard for the safety of the motoring public, aggravated (punitive) damages are appropriate in this action in order to punish Defendant YRC and to deter others from similar conduct.

62.     Defendant YRC's reckless and intentional behavior, and their complete indifference and conscious disregard for the safety of the motoring public, directly and proximately caused the wreck and the resulting injuries to Plaintiff described herein.

**WHEREFORE** Plaintiff prays for judgment against Defendant YRC in a sum in excess of Seventy-Five Thousand Dollars ($75,000) exclusive of costs and interest, as is fair and reasonable to compensate Plaintiff for her injuries, plus aggravated (punitive) damages, and for such other relief this Court deems just and proper under the circumstances.

## COUNT V

## DIRECT NEGLIGENCE AGAINST DEFENDANT YRC BASED UPON NEGLIGENT HIRING/RETENTION

**COMES NOW** Plaintiff and incorporates and re-alleges each and every paragraph set forth above as if they were fully incorporated herein and further states:

63.     At all times prior to the aforementioned collision, Defendant YRC had a duty, imposed by law and regulation, to diligently and adequately screen potential drivers to the extent mandated by the Federal Motor Carrier Safety Regulations.

64.     Such duties include, but are not limited to:

a)     To obtain a completed employment application before permitting an agent, servant, and/or employee drive its commercial motor vehicle. 49 C.F.R. §391.21;

b) To investigate the agents, servants, and/or employee's driver's employment record during the preceding three years by all reasonable means. 49 C.F.R. §§391.23(a)(2), 391.23(c);

c) To inquire into the agent's, servant's, and/or employee's driving record within 30 days after employment begins. 49 C.F.R. §391.23(a);

d) To require a successfully completed road test before commencing employment, and permitting the applicant, agent, servant, and/or employee to drive a commercial motor vehicle. 49 C.F.R. §391.31(a);

e) To investigate the driver's safety performance history with Department of Transportation regulated employer during the preceding three years. 49 C.F.R. §391.23(2);

f) Ensure that its driver was physically qualified to operate a tractor-trailer and had a valid and current DOT medical examiner's certificate. 49 C.F.R. §391.41; and

g) Ensure that its driver had no current diagnosis of high blood pressure likely to interfere with the ability to operate a commercial motor vehicle safely. 49 C.F.R. §391.41(b)(6).

65. Defendant YRC had a duty to comply with all of the above and below listed Laws, Federal Regulations, Codes, and/or Illinois Statutes, so as to protect the general public, including the Plaintiff, from the unsafe operation of commercial motor vehicles by its drivers.

66. Defendant Samuel Morgan was unqualified to operate a commercial motor vehicle due to his driving history, inexperience, lack of skill, lack of training, lack of knowledge, and physical medical condition.

67. That, because of Defendant Samuel Morgan's aforementioned inadequacies, Defendant YRC should not have hired him to operate a commercial motor vehicle.

68. That Defendant YRC knew, or through the exercise of ordinary care should have

known that Defendant Samuel Morgan was unqualified to safely operate a commercial motor vehicle.

69.     That by failing to properly and adequately screen and investigate its drivers, including Defendant Samuel Morgan, before and during employment, Defendant YRC violated numerous Federal Motor Carrier Safety Regulations, including but not limited to those specifically identified in this count.

70.     Had Defendant YRC obeyed the Federal Motor Carrier Safety Regulations, including but not limited to those specifically identified in this count, it could have learned that Defendant Samuel Morgan was unqualified to safely operate a commercial motor vehicle.

71.     Defendant Samuel Morgan's negligent actions on the day of the collision with Plaintiff was consistent with, related to, and a product of his aforementioned inadequacies in operating a commercial motor vehicle.

72.     Defendant YRC' actions and omissions in hiring Defendant Samuel Morgan, including their violations of the Federal Motor Carrier Safety Regulations, was the proximate cause of the injuries and damages sustained by Plaintiff resulting from the aforementioned motor vehicle collision.

73.     Defendant YRC' actions and omissions in hiring Defendant Samuel Morgan, including their violations of the Federal Motor Carrier Safety Regulations were willful, wanton, and reckless, and demonstrated a complete indifference and conscious disregard for the law and for the safety of others, including Plaintiff.

74.     Defendant YRC' willful, wanton, and reckless behavior evidenced a complete indifference and conscious disregard for the safety of the motoring public and aggravated (punitive) damages are appropriate in this action in order to punish Defendant YRC and to deter others from similar conduct.

**WHEREFORE** Plaintiff prays for judgment against Defendant YRC in a sum in excess of Seventy-Five Thousand Dollars ($75,000) exclusive of costs and interest, as is fair and reasonable to compensate Plaintiff for her injuries, plus aggravated (punitive) damages, and for such other relief this Court deems just and proper under the circumstances.

## COUNT VI

## DIRECT NEGLIGENCE AGAINST DEFENDANT YRC BASED UPON NEGLIGENT TRAINING

**COMES NOW** Plaintiff and incorporates and re-alleges each and every paragraph set forth above as if they were fully incorporated herein and further states:

75.     Defendant YRC owed the general public, including Plaintiff, a duty to properly train its drivers, including Defendant Samuel Morgan, on the safe operation of a tractor-trailer.

76.     Defendant YRC failed to properly instruct Defendant Samuel Morgan on the safe operation of a tractor-trailer.

77.     Defendant YRC owed the general public, including Plaintiff, a duty to properly train its drivers, including Defendant Samuel Morgan, on the safety regulations set forth in the Federal Motor Carrier Safety Regulations.

78.     At all times prior to the aforementioned collision, Defendant YRC had a duty, imposed by law and regulation, to diligently and adequately screen potential drivers to the extent mandated by the Federal Motor Carrier Safety Regulations.

79.     Such duties include, but are not limited to:

a)      To require and verify that its drivers pass a knowledge and skills test as prescribed by the Federal Motor Carrier Safety Regulations.  49 C.F.R. §380.109 and 49 C.F.R. §380.509;

b)      To train its drivers on the Federal Motor Carrier Safety Regulations pertaining to medical certification, medical examination procedures, general qualifications, responsibilities, and disqualifications.  49 C.F.R. §380.503;

c)      To ensure that its drivers have been properly trained and to show proof of that training with a training certificate. 49 C.F.R. §380.505;

80.     Defendant YRC had a duty to properly instruct its drivers, including Defendant Samuel Morgan on the rules as regulations as contained in Part 392 of the Federal Motor Carrier Safety Regulations which pertain to the safe operation of a commercial motor vehicle.

81.     Defendant YRC failed to properly instruct Defendant Samuel Morgan on the Federal Motor Carrier Safety Regulations, including those specifically referenced in this count.

82.     Defendant YRC owed the general public, including Plaintiff, a duty to provide ongoing safety courses to its drivers, including Defendant Samuel Morgan.

83.     Defendant YRC failed to provide adequate continuing safety courses to Defendant Samuel Morgan.

84.     Defendant YRC had a duty to comply with all of the above and below listed duties, so as to protect the general public, including the Plaintiff, from the unsafe operation of commercial motor vehicles by its drivers.

85.     Defendant YRC breached its duty to the general public, including the Plaintiff, by its failing to properly train Defendant Samuel Morgan, Defendant YRC' tractor-trailer driver, who was unqualified, incompetent and should not have been permitted to operate a tractor-trailer.

86.     Based on Defendant Samuel Morgan's driving history, inadequate experience,

and training, Defendant YRC knew or had information from which defendant, in the exercise of ordinary care, should have known, that its driver operating its vehicle created a high degree of probability of injury to other persons operating or traveling in motor vehicles on public roads, streets and highways.

87.    That Defendant YRC was negligent in failing to properly train its drivers, including Defendant Samuel Morgan, on the safe operation of a commercial motor vehicle and the Federal Motor Carrier Safety Regulations.

88.    That Defendant YRC was negligent in failing to provide continuing education on the safe operation of a commercial motor vehicle and on the Federal Motor Carrier Safety Regulations.

89.    That Defendant Samuel Morgan's aforementioned negligent actions and/or inactions were consistent with the fact that Defendant YRC failed to properly train him in the safe operation of a commercial motor vehicle and/or the adherence to the Federal Motor Carrier Safety Regulations.

90.    These actions and omissions of Defendant YRC relating to this crash were willful, wanton, and reckless, and demonstrated a complete indifference and conscious disregard for the law and for the safety of others, including Plaintiff.

91.    Defendant YRC' willful, wanton, and reckless behavior, and for its complete indifference and conscious disregard for the safety of the motoring public, aggravated (punitive) damages are appropriate in this action in order to punish Defendant and to deter others from similar conduct.

92.    Plaintiff's injuries were directly and proximately caused by Defendant YRC' breach of and failure to comply with its duty to properly train Defendant Samuel Morgan, its tractor-trailer driver.

**WHEREFORE** Plaintiff prays for judgment against Defendant YRC in a sum in excess of Seventy-Five Thousand Dollars ($75,000) exclusive of costs and interest, as is fair and reasonable to compensate Plaintiff for her injuries, plus aggravated (punitive) damages, and for such other relief this Court deems just and proper under the circumstances.

<u>COUNT VII</u>
<u>DIRECT NEGLIGENCE AGAINST DEFENDANT YRC BASED UPON NEGLIGENT SUPERVISION</u>

**COMES NOW** Plaintiff and incorporates and re-alleges each and every paragraph set forth above as if they were fully incorporated in this count and further states:

93.     Defendant YRC owed the general public, including Plaintiff, a duty to continuously evaluate its drivers' performance, including through supervision, and to discharge an incompetent or unsafe driver before he/she injured the public or property.

94.     Defendant YRC had a duty to not require or permit a driver, including Defendant Samuel Morgan, to operate a commercial motor vehicle, while the driver's ability or alertness is so impaired, or so likely to become impaired, through fatigue, illness, or any other cause, as to make it unsafe for him/her to begin or continue to operate the commercial motor vehicle.  49 C.F.R. §392.3.

95.     Defendant YRC had a duty to inquire into the motor vehicle record of its drivers and give "great weight" to violations such as speeding or reckless driving.  49 C.F.R. §391.25.

96.     Defendant YRC had a duty to ensure that its drivers were continuously physically qualified to safely operate a tractor-trailer. 49 C.F.R. §391.41, 391.43.

97.     Defendant YRC had a duty to maintain a driver qualification file for each driver it employs.  49 C.F.R. §391.51

98.   Defendant YRC had a duty to maintain a driver investigation history file for each driver it employs.  49 C.F.R. §391.53.

99.   Defendant YRC had a duty to not allow or permit its on-duty drivers to be possession of drugs as listed in 49 C.F.R. §392.4(a).

100.   Defendant YRC had a duty to not schedule a run, nor permit, nor require the operation of any commercial motor vehicle between points in such a period of time as would necessitate the commercial vehicle being operated at speeds greater than those prescribed by law.  49 C.F.R. §392.6.

101.   Defendant YRC had a duty to comply with all of the above and below listed duties, Rules, Regulations and codes, so as to protect the general public, including the Plaintiff, from the unsafe operation of commercial motor vehicles by its drivers.

102.   Defendant YRC breached its above listing duties to the general public, including the Plaintiff, by its failing to properly supervise Defendant Samuel Morgan, Defendant YRC' tractor-trailer driver, who was unqualified, incompetent and should have been discharged prior to this crash.

103.   Based on Defendant Samuel Morgan's driving history, lack of supervision and continued retention by his employer, Defendant YRC knew or had information from which defendant, in the exercise of ordinary care, should have known, that its driver operating its vehicle created a high degree of probability of injury to other persons operating or traveling in motor vehicles on public roads, streets and highways.

104.   These actions and omissions of Defendant YRC relating to this crash were willful, wanton, and reckless, and demonstrated a complete indifference and conscious disregard for the law and for the safety of others, including Plaintiff.

105.   Defendant YRC' willful, wanton, and reckless behavior, and for its complete indifference and conscious disregard for the safety of the motoring public, aggravated

(punitive) damages are appropriate in this action in order to punish Defendant and to deter others from similar conduct.

106.    Plaintiff's injuries were directly and proximately caused by Defendant YRC's breach of and failure to comply with its duty to properly train Defendant Samuel Morgan, its tractor-trailer driver.

**WHEREFORE** Plaintiff prays for judgment against Defendant YRC in a sum in excess of Seventy-Five Thousand Dollars ($75,000) exclusive of costs and interest, as is fair and reasonable to compensate Plaintiff for her injuries, plus aggravated (punitive) damages, and for such other relief this Court deems just and proper under the circumstances.

Respectfully submitted,

**SCHULTZ & MYERS, LLC**

/s/ Deme Sotiriou
_____

Deme E. Sotiriou, IL # 6288773
Joshua P. Myers, IL #6284637
999 Executive Parkway Drive
Suite 205
St. Louis, Missouri 63141
Telephone:  314-744-8900
Facsimile:  314-720-0744
E-mail: deme@schultzmyers.com

IN THE CIRCUIT COURT OF ST. CLAIR COUNTY
STATE OF ILLINOIS

DEANGELA MANNING,

                    Plaintiff,                Case No:

vs.                                            Division:

YRC INC.

and

SAMUEL MORGAN,

                    Defendants.

## AFFIDAVIT PURSUANT TO SUPREME COURT RULE 222(B)

        Pursuant to Supreme Court Rule 222 (B), counsel for Plaintiff certifies that Plaintiff seeks damages in excess of $50,000.00.

                              Respectfully submitted,

                              **SCHULTZ & MYERS, LLC**

                              /s/ Deme Sotiriou
                              _____
                                Deme Sotiriou, IL # 6288773
                                999 Executive Parkway Drive
                                Suite 205
                                St. Louis, Missouri 63141
                                Telephone:  314-744-8900
                                Facsimile:  314-720-0744
                                E-mail: deme@schultzmyers.com